The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | NO.  CR 12-133 RSM |
| | ) | |
| v. | ) | **DEFENDANT'S SECOND TRIAL** |
| | ) | **MEMORANDUM** |
| MARK SPANGLER, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

COMES NOW MARK SPANGLER, through counsel, Jon Zulauf and John Carpenter and submits this second trial memorandum.

We have had the opportunity to review the Government's Trial Brief (Document 95) and it raises additional issues about relevance under the Federal Rules of Evidence, specifically Rules 401, 402 and 403.  The Government's brief lays out the evidence it intends to introduce at trial and the arguments it intends to make to the jury.  There are at

**DEFENDANT'S SECOND TRIAL MEMORANDUM - 1**

ZULAUF & CHAMBLISS
THE HOGE BUILDING, SUITE 1111
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 682-1114

least three issues that the Court should address before opening statements are made.

**First, should the government be able to introduce evidence of how much money the defendant will receive upon completion of the proceedings against him?** In the Government's brief at page 3 the governments asserts that: "Under the terms of the "SV" documents, Spangler Ventures (essentially Mark Spangler), as manager of the SV funds, was entitled to twenty percent (20%) of the proceeds after the sale, liquidation, or disposal of either company." Thus in the event that either Terahop or Tamarac was sold, Spangler stood to gain millions. In fact, after the receiver sold Tamarac, Spangler Ventures/Mark Spangler was due to receive approximately $2 million, as its share of the profits of this sale. As of today, Spangler has not relinquished claim to some of this money, and apparently hopes to receive approximately $400,000 following completion of legal proceedings against him." Regarding the Government's assertion as to the $400,000, the evidence is not relevant under Rule 401 and prejudicial under Rule 403. It has no probative value. If there is any relevance at all, it is outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury under Rule 403. A jury may believe that unless they find the defendant guilty Mr. Spangler will take an additional amount of money from his investors. It gives the jury an incentive to find him guilty.

**Second, should the government be able to introduce evidence of Mr. Spangler's intent to move to Ecuador?** At page 5 of the Government's brief, it suggests that the Government expects to offer proof of Mr. Spangler's intent to "escape" to Ecuador. The

DEFENDANT'S SECOND TRIAL MEMORANDUM - 2

ZULAUF & CHAMBLISS
THE HOGE BUILDING, SUITE 1111
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 682-1114

Government's claim is fundamentally untrue.  There was no intent to "escape" to anywhere.  Mr. Spangler sat down with his lawyers at Lane Powell and talked about the future.  Those lawyers told him that there could be years of litigation, that Mr. Spangler would not be able to work, and that he should actively try to reduce his expenses to as low as possible.  He explored various options and discussed those options with his lawyers.  Costa Rica, Ecuador, and other options were suggested.  Those options were discussed and Mr. Spangler told his lawyers that he was considering Ecuador.  The decision had nothing to do with "escaping".

The evidence is not probative of a material fact under Rule 401. It creates a substantial danger of unfair prejudice, confusing the issues, and misleading the jury under Rule 403.

**Third, should the Government be allowed to argue that this was a "Ponzi" scheme?**
The Government's trial brief, at page 4, makes it clear how unfair it is to use the term "Ponzi" to describe Mr. Spangler's actions.  The conduct that the Government describes at page 4 of its brief is both legal and appropriate.  The Government's brief claims that Mr. Spangler began his "Ponzi" scheme when he used "his client's pooled funds to pay phantom interest payments and dividends back to themselves and to other clients."  The conduct attributed to Spangler is conduct that occurs every day in the world of business. When a start up business borrows money from a bank the company owes both interest and principal on the debt.  The start up often has no revenues and no profit.  The business is permitted to pay interest to the bank using the bank's own money.  There is nothing

DEFENDANT'S SECOND TRIAL MEMORANDUM - 3

ZULAUF & CHAMBLISS
THE HOGE BUILDING, SUITE 1111
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 682-1114

illegal about that.  The government tries to make it sound evil by calling it a Ponzi scheme.

The term "Ponzi" used in this context is unfair and will have a tendency to mislead the jury.

Next, at page 5, the Government again misuses the term "Ponzi".  It claims the

second part of the "Ponzi" scheme was when Spangler tried to raise funds to liquidate an

investor's interest in a fund.  Again, there is nothing illegal nor improper about doing what

Mr. Spangler did.  It is perfectly fine to find other investors if the company needs money.  A

company can have a need for money for a variety of reasons.  It may need money to pay

for software development.  It may need money to pay for bookkeeping services.  It may

need money to pay interest on a loan.  There is nothing improper about raising money for

business purposes.  Additionally a company, if it is a young start up, may have investors

come and go.  Depending on the liquidity of the company, if an investor wants to withdraw

from the investment and sell his stock back to the company, there is nothing wrong with

raising money to accomplish that purpose.  If the company wants to redeem an investor it

can take money from profits, it can borrow money from a bank, or it can obtain money by

selling stock.  It is both legal and appropriate to do that.  The Government tries, again, to

make it sound evil by calling it a "Ponzi" scheme.  It is a brazen attempt to prejudice the

jury.  The Government's use of the term "Ponzi" is inappropriate in this case and should be

excluded under Rule 403.

Again, it should be noted that the circumstances of this case are dramatically

different than the case against Charles Ponzi.  To call it a Ponzi scheme has the same

effect and impact as calling it a Jeffrey Dahmer scheme.  The only reason to do that would

be to prejudice the jury.  The Government can offer it's proof, but should not be allowed to

DEFENDANT'S SECOND TRIAL MEMORANDUM - 4

ZULAUF & CHAMBLISS

THE HOGE BUILDING, SUITE 1111
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 682-1114

1    label the conduct with another defendant's name to make it sound evil.

2         Respectfully submitted this 11th day of October, 2013.

3

4                                    /Jon R. Zulauf
5                                    Jon R. Zulauf – WSBA # 6936
                                     Counsel for Defendant
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANT'S SECOND TRIAL MEMORANDUM - 5

ZULAUF & CHAMBLISS
THE HOGE BUILDING, SUITE 1111
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 682-1114

## CERTIFICATE OF SERVICE

I hereby certify that on October 11, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorneys of record for the government.  I hereby certify that I have served the attorneys of record for the government that are non CM/ECF participants via United States Mail, postage prepaid.

/Darlene McLean
Darlene McLean
Legal Assistant for
Jon R. Zulauf
The Hoge Building
705 Second Avenue #1111
Seattle, WA  98104
(206) 682-1114

DEFENDANT'S SECOND TRIAL MEMORANDUM - 6

ZULAUF & CHAMBLISS
THE HOGE BUILDING, SUITE 1111
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 682-1114