1             UNITED STATES DISTRICT COURT
            WESTERN DISTRICT OF WASHINGTON
2                    AT SEATTLE
   _____
3
   UNITED STATES OF AMERICA,          )
4                                      )   NO. CR12-133RSM
          Plaintiff,                   )
5                                      )   SEATTLE, WASHINGTON
   v.                                  )   10/15/2013
6                                      )
   MARK F. SPANGLER,                   )
7                                      )   TRIAL - DAY 1
          Defendant.                   )
8                                      )
   _____
9

10            VERBATIM REPORT OF PROCEEDINGS
        BEFORE THE HONORABLE RICARDO S. MARTINEZ
11            UNITED STATES DISTRICT JUDGE

12 _____

13 APPEARANCES:

14   For Plaintiff:        CARL H. BLACKSTONE
                          FRANCIS FRANZE-NAKAMURA
15                        MICHAEL J. LANG
                          United States Attorney's Office
16

17   For Defendant:       JON R. ZULAUF
                          Zulauf & Chambliss
18
                          JOHN R. CARPENTER
19                        Federal Public Defender's Office

20                        ALAN ZARKY

21

22

23

24
   Proceedings recorded by mechanical stenography, transcript
25 produced by Reporter on computer.

1                        PROCEEDINGS

2    _____

3          THE COURT:  Good morning to all of you.  Please be

4    seated.  Ladies and gentlemen, as you have just heard, I am

5    Judge Martinez.  Welcome to our courtroom.  You have been

6    summoned to this court to serve as potential jurors in this

7    case.

8       In a moment, I will formally introduce the case, the

9    attorneys.  But, first of all, out of curiosity, just for my

10   sake, and maybe to help counsel a little bit, how many of you

11   have ever been involved in the jury selection process before,

12   anywhere, anytime, regardless of whatever level of court?

13   Just how many of you have ever done this before?  That is

14   quite a bit.  I would say maybe a little more than half of

15   you.  Great.

16      I assume all of you have read the juror handbook, saw the

17   little video that they give you downstairs.  Having reviewed

18   those materials, I think you are all aware that the very

19   first part of any trial involves the selection of the jury.

20      Under our Constitution, a defendant in a criminal case,

21   which this is, charged by the government with the commission

22   of a crime, has the right to be tried before an impartial

23   jury made up of 12 citizens from our community.

24      All of you have been randomly selected off a major jury

25   wheel to be here today, and then you have been put again, by

1    the computer downstairs in the jury room, by a random number

2    generator, into this particular order.  Every single one of

3    you should have gotten a card with a number on it, correct?

4    Do all of you have one?

5        All right.  We will be using those as we go through the

6    process.  And let me, first of all, formally introduce the

7    case and the parties.  As indicated, this is the matter of

8    the United States of America versus Mark Francis Spangler.

9        The government is represented by three Assistant United

10    States Attorneys: Carl Blackstone, Mike Lang, and Francis

11    Franze-Nakamura.

12        Gentlemen, would you rise?

13            MR. LANG:  Good morning.

14            MR. BLACKSTONE:  Good morning.

15            MR. FRANZE-NAKAMURA:  Good morning.

16            THE COURT:  The defendant is present, represented by

17    his counsel, Mr. Jon Zulauf and John Carpenter.

18        Mr. Zulauf, would you please introduce Mr. Spangler?

19            MR. ZULAUF:  To my right is Mark Spangler.

20            THE DEFENDANT:  Good morning.

21            THE COURT:  All right.  As we get ready to do the

22    selection process, here is exactly how we are going to do

23    this:  In order to begin the jury selection process, you will

24    all be placed under oath, and then a series of questions will

25    be asked of you as a panel and as individuals.  We need to

1    swear you in, every single prospective juror, before that

2    starts.

3        The questions are not meant to embarrass you in any way.

4    They are simply meant to elicit information from which the

5    attorneys can then use to make their selections.  So when you

6    answer these questions, please be as straightforward and as

7    honest as you possibly can.  Let the attorneys do their job.

8    Your job is not to try to figure out, why am I being asked

9    that?  What does this mean?  No.  You just answer as best you

10   can, and then let the attorneys do their job.

11       All right.  So in order to start the process, like I said,

12   we need to swear you all in.  Would every prospective juror

13   please stand, raise your right hand, and pay attention to the

14   oath.

15       (Prospective jurors sworn in.)

16       (Voir dire, not herein transcribed.)

17       //////////

18       (Jury sworn in.)

19           THE COURT:  All right.  Let me take a moment to

20   introduce the members of the lower bench here.

21       The hardest working person in the courtroom, our court

22   reporter, Kari McGrath.  You know, I talk for a while, and

23   then I'm quiet.  The attorneys talk for a while, and then

24   they are quiet, then the witnesses.  You will see, she is

25   working the entire time.  And it is actually not a very easy

1    job to do.  It is kind of tough.  But she does a magnificent

2    job.  We are very lucky to have her with us.

3        Ms. Cuaresma you have already met.  Laurie Cuaresma is our

4    court clerk.  She job shares with Ms. Lowell Williams, who

5    you will see later on in the week as well.

6        And over to my right, kind of hidden behind all of this

7    stuff over here, is my law clerk, Stephanie Safdi, assigned

8    to this particular case.

9        So now that you are the jury in this case, let me take a

10   few moments to tell you something about your duties as jurors

11   and give you some preliminary instructions.  At the end of

12   the trial, I will give you a more detailed set of

13   instructions that will control your deliberations.

14       When you deliberate, it will be your duty to weigh and

15   evaluate all the evidence received in the case, and in that

16   process, decide the facts.  The way I look at it, we both

17   serve as judges in the case.  You judge the facts, and I have

18   nothing to do with the facts at all.  Whether I believe a

19   witness or don't believe a witness doesn't make one bit of

20   difference, because I am not the one judging that.  That is

21   up to you.

22       I decide the law to give you.  And I am not going to ask

23   any of you for your advice before I give you those set of

24   instructions at the end of the case.  To the facts as you

25   find them, you apply the law that I give to you, whether you

1  agree with that law or not.  You are to decide the case

2  solely on the evidence and the law before you.  You must not

3  be influenced by any personal likes, dislikes, opinions,

4  prejudices, or sympathy.  Please do not take anything I may

5  say or do during the trial as indicating what I think of the

6  evidence or what your verdict should be.  That is entirely up

7  to you.

8      Remember, now, this is a criminal matter brought by the

9  United States government.  As I indicated, the government

10  charges the defendant with the following offenses:  Counts 1

11  through 25, charged with wire fraud; Counts 26 through 32,

12  charged with money laundering; and, finally, in Count 33,

13  charged with investment advisor fraud.

14      Now, as I told you, I will give you a detailed set of

15  instructions at the end.  But I want you just to kind of get

16  an understanding of what those allegations are.  And they are

17  only allegations at this point in time.

18      Those charges that have been brought are contained in what

19  is known as the indictment.  That is the charging document

20  that is returned by a grand jury.  It simply describes those

21  charges.  The indictment itself is not evidence.  It is not

22  proof of anything at all.

23      Mr. Spangler has pled not guilty to each and every one of

24  the charges.  And that means he is presumed innocent unless

25  and until the government proves the defendant guilty beyond

1   any reasonable doubt.  In addition, the defendant always has

2   the right to remain silent and never has to prove innocence

3   or present any evidence if he does not wish.

4       In order to help you follow the evidence, let me give you

5   a brief summary of the elements of the crimes which the

6   government must prove if they want to make their case.

7       The elements of wire fraud are that a defendant knowingly

8   devised a scheme or plan to defraud or to obtain money by

9   means of false or misleading statements that were capable of

10  influencing a person to part with money, that the defendant

11  acted with the intent to defraud, deceive, or cheat, and that

12  the defendant used interstate wire to carry out an essential

13  part of that scheme.

14      The elements of money laundering are that a defendant

15  knowingly engaged in a monetary transaction, that the

16  defendant knew the transaction involved criminally-derived

17  property of a value over $10,000, that the property was in

18  fact derived from wire fraud or mail fraud, and that the

19  transaction occurred in the United States.

20      The elements of investment advisor fraud are that the

21  defendant was an investment advisor who engaged in a scheme

22  or plan to defraud his investors through the use of

23  interstate wire or other instrumentalities of interstate

24  commerce.

25      So what is evidence?  First of all, let me just ask.  I

1    can't remember now, in all of the voir dire process that we

2    did.  How many of you have actually served on a jury before?

3    All right.  Quite a few of you.

4        The evidence you are to consider in deciding what the

5    facts are consists of the following things:  The sworn

6    testimony of any witness from the stand, the exhibits that

7    are received into evidence, and any facts to which the

8    parties stipulate or agree to.

9        Now, what does it mean when an exhibit is received into

10   evidence?  Whenever a witness takes the stand and is shown an

11   exhibit that has not been admitted yet, counsel will ask the

12   witness to identify that, and one side or the other will move

13   to admit it into evidence.

14       Many exhibits are stipulated to by both sides.  Some are,

15   of course, not.  They may be contested.  Either way, the

16   court makes a ruling on it.  If the exhibit is admitted into

17   evidence, what it means for you as jurors is that it will be

18   available for you in the jury room at the end of the trial,

19   when you begin deliberations.

20       If the exhibit is not admitted, whatever testimony the

21   court has allowed is fair game for you to consider in any way

22   you want to, but the exhibit itself will not physically be

23   back there with you.  Understand?

24       All right.  What is not evidence?  The following things

25   are not evidence, and you are not to consider them as

1    evidence in deciding the facts of this case:  The statements

2    and the arguments of the attorneys are not evidence; the

3    questions and objections made by the attorneys are not

4    evidence; any testimony that you are instructed by me to

5    disregard; and anything you may see or hear when the court is

6    not in session, even if what you see or hear is done or said

7    by one of the parties or by one of the witnesses.  Make

8    sense?

9        All right.  Evidence can be either direct or

10   circumstantial.  I think you heard some of that during the

11   actual voir dire process itself.  Direct evidence is direct

12   proof of a fact, such as testimony by a witness about what

13   that witness personally saw or heard or did.  Circumstantial

14   evidence is indirect evidence; that is, it is proof of one or

15   more facts from which one can find another fact.

16       What does all that mean?  Let me give you just one real

17   brief example.  If a witness takes the stand and says, "It

18   rained at my house last night.  I looked outside, and it was

19   raining.  Rain was falling on the lawn," that's direct

20   evidence.  They saw the rain coming down.  It rained.

21       You get another witness that says, "I think it rained at

22   my house last night.  I got up and the lawn was all wet."

23   Well, that could be, or it could be the sprinklers went off.

24   It could be the street-cleaning crew came by.  It could be

25   all sorts of things, right?  Do you see the difference?

1    You as jurors are to consider both direct and

2    circumstantial evidence, either can be used to prove any

3    fact.  The law makes no distinction between the weight to be

4    given to either direct or circumstantial evidence.  It is for

5    you as a juror to decide how much weight to give to any item

6    of evidence.

7    Okay.  There are rules of evidence that control what can

8    be received into evidence.  When a lawyer asks a question or

9    offers an exhibit, and a lawyer on the opposing side thinks

10   that is not permitted by those rules, then that lawyer has

11   the duty to object.  If the court overrules the objection,

12   the question will be answered, and the exhibit may be

13   received.  If the court sustains the objection, the question

14   cannot be answered, or the exhibit cannot be received.

15   What that means for you is as follows:  Whenever the court

16   sustains an objection to a question, you must ignore the

17   question and not try to guess what the answer would have been

18   if that witness had been allowed to answer it.

19   Sometimes, as I indicated previously, I may order that

20   evidence be stricken from the record and that you disregard

21   it or ignore it.  And that means exactly that, that when you

22   are deciding the case ultimately, you are not to consider the

23   evidence that you were told to disregard.

24   In deciding the facts in any case, you may have to decide

25   which testimony to believe, which testimony not to believe.

1    You are free to believe everything a witness says, or part of

2    it, or none of it.

3        In considering the testimony of any witness, you may take

4    into account the following things:  The witness' opportunity

5    and ability to see or hear or know the things testified

6    about; the witness' memory; the witness' manner while

7    testifying; the witness' interest in the outcome of the case,

8    if any; the witness' bias or prejudices, again, if any;

9    whether other evidence contradicted the witness' testimony;

10   the reasonableness of the witness' testimony in light of all

11   the evidence presented; and any other factors that bear on

12   believability.

13       The weight of the evidence as to a fact does not

14   necessarily depend on the number of witnesses who testify

15   about it.

16       All right.  Let me talk a little bit about your conduct as

17   jurors and some important things about -- earlier I mentioned

18   the Internet.  Let me clarify about what I was trying to say.

19   First, keep an open mind throughout the entire trial.  You

20   are not to decide what the verdict should be until you and

21   your fellow jurors have completed your deliberations at the

22   very end of the case.

23       A criminal trial is a very highly structured event.  The

24   government always gets to go first.  They always get to put

25   on all of their evidence before the defense even has an

1    opportunity, should they wish to do so.  So that is why you

2    need to keep that open mind throughout the entire process.

3        Secondly, because you must decide the case based only on

4    the evidence received in the case and on the instructions of

5    law that apply, you must not be exposed to any other

6    information about the case or the issues it involves during

7    the course of your jury duty.

8        Thus, until the end of the case, or until the court tells

9    you otherwise, you are not to communicate with anyone in any

10   way, and do not let anyone else communicate with you in any

11   way about the merits of the case or anything to do with it.

12   This includes discussing the case in person, in writing, by

13   phone, electronically, via email, text messaging, Twitter,

14   Internet chat rooms, blogs, websites.  I can't even get them

15   all.  But you know what I'm talking about.

16       This has been actually an ongoing problem in the United

17   States recently, with the advent of the Internet.  And it

18   tends to -- well, I'm not going to pick on younger people,

19   but it tends to apply to the younger generation, because they

20   are so used to communicating in that way.  You can't do that.

21       You are not allowed to talk to counsel.  They are not

22   allowed to talk with you.  If you go home and you start

23   Googling stuff and pulling up information just because you

24   think, oh, I could be a more informed juror, you are actually

25   doing a complete disservice to the parties.  And if that

1    comes out, it could cause a mistrial.

2       So until you get the case for deliberations, this

3    instruction continues to apply to communicating with everyone

4    else, including your family members, your employers, the

5    media, the press, the people involved in the trial, or even

6    each other.

7       Now, that is changing in some areas.  When you go back for

8    our breaks, as we start the trial itself, you will not be

9    allowed to discuss the case.  There are some jurisdictions,

10   Arizona, for example, experimenting with allowing the jurors

11   to discuss it as it goes along.  Now, there are other

12   instructions that are very important, because it is a highly

13   structured event, et cetera, et cetera.  Keep things in mind,

14   but they are experimenting with things like that.

15      Until those of us here see proof that it works better one

16   way or the other, we are sticking to the old way.  You are

17   not allowed to discuss it.  That, I think, in previous

18   jurors' experience, has been one of the most frustrating

19   things, that you really can't talk about it.  You are

20   absorbing all this information.  The attorneys are telling

21   you that we are going for four to six weeks maybe on this

22   case, and yet you are not allowed to talk to anybody.  That

23   is extremely frustrating.  But it is absolutely necessary to

24   be able to do your job as a fair and impartial juror.

25      Because you will receive all the evidence and legal

1   instructions you properly may consider to return a verdict,

2   again, you have to be very, very careful not to even

3   accidentally be exposed to anything.  Don't read or listen to

4   any news or media accounts or commentary about the case or

5   anything to do with it.

6       You can't do any research, as I told before.  But on the

7   reading part of it, or being exposed to it, I don't know how

8   many of you regularly read the paper.  I am old enough, I

9   don't do it on screen.  I still like the newspaper, even

10  though it is getting smaller all the time.  I still like the

11  thing in my hand in the morning, with a cup of coffee, and

12  looking at it.  If you do the same thing, then have someone

13  else in your family, someone else that lives with you go

14  through it first.  Go through the local section, especially.

15  And if there is anything to do with this case, just cut that

16  out and save it for the end of the trial.

17      At the end of the trial, when the jurors are dismissed,

18  all these instructions will be done away with, and you can

19  talk about the case to your heart's content.  But between now

20  and then, please, you can't communicate with anyone about it.

21  You can't be exposed to any information that might influence

22  you.

23      First of all, one thing I can tell you, after 25 years of

24  being on the bench, is how many times reporters, media

25  people, get it wrong.  And I think many of you who have

1   served as jurors in the past go, wait, I was a juror, and

2   that wasn't what happened at all.  So you can't tell.

3       The law requires these restrictions to ensure the parties

4   have a fair trial based on the same evidence and that each

5   party has had an opportunity to address.  A juror who

6   violates these restrictions jeopardizes the fairness of the

7   proceeding.  As I said, a mistrial could result.

8       If any juror is exposed to any outside information, I want

9   you to do the following thing:  If it happens to you, if you

10  get exposed to somebody, one, don't repeat it to anyone else

11  on the jury, all right?  Don't say, oh, listen to what

12  happened to me, look what I saw.  No.  Two, let our court

13  clerk know as soon as possible, away from everybody else's

14  hearing.  I will then let the attorneys know.  We will

15  probably bring you out individually, find out what you were

16  exposed to, and how to deal with it at that point in time.

17  All right?

18      So does that mean you can't use the Internet at all?  No,

19  of course not.  But it means that if you accidentally, as you

20  are using the Internet or going through it or whatever, see

21  anything that comes up along these lines, please, just stay

22  away from it.

23      In fact, I think the best way is to just not look at

24  anything that has to do with fraud or investment advising or

25  anything else like that.  Just stay away from that, because

1    that of course will then reduce the odds that you might be

2    accidentally exposed to any information about this particular

3    case.

4        At the end of the trial, you will have to make your

5    decision based on what you recall of the evidence.  You will

6    not have a written transcript of the trial.  So I urge you to

7    pay close attention to the testimony as it comes out.

8        Now, you will be allowed to take notes, if you wish, to

9    help you remember the evidence.  What we will do is we will

10   pass out little notebooks for each of you and a pen.  On the

11   front of that notebook should just be your juror number, not

12   a name or anything, just 1 through 16.  Those always stay

13   back in the jury room or in the courtroom when you have them.

14   When you leave for breaks or you leave at the end of the day,

15   put them all back there.  Don't take them with you.

16       If you do take notes, please keep them to yourself until

17   you and your fellow jurors go to the jury room to begin your

18   deliberations.  Do not let note-taking distract you from

19   being attentive.  The attorneys have a concern with people

20   taking notes, because remember one of the things we talked

21   about, about judging credibility, is the witness' manner

22   while testifying?  Well, if you are too busy doing this

23   (indicating), you are not going to be looking up there to see

24   all those things, right?

25       It's the same thing as -- don't get me going on a rant,

1    but texting, right?  Texting, which phones are never allowed

2    at our dinner table, and they are still not allowed at our

3    dinner table for the same reason.  So the same thing applies

4    to you with the note-taking.  That is the attorneys' concern.

5        And I can tell you personally, back when I was an

6    undergrad, I started out in the hard sciences.  And I was

7    taking this one chemistry class that was really, really

8    tough.  And I was so involved in taking notes to make sure I

9    could really remember everything that I don't think I ever

10   remembered what my professor looked like.  That is not good,

11   not in this situation.

12       So don't let the note-taking distract you from being

13   attentive.  When you leave from recesses, as I said, leave

14   them back there.  Whether or not you decide to take notes,

15   you should rely on your own memory of the evidence.  Notes

16   are only there to help assist that memory.  You should never

17   be overly influenced by your notes or those of your fellow

18   jurors.

19       All right.  Let's talk a little bit about procedure and

20   what is going to happen next.  The next phase of the trial

21   will now begin.  First, each side has the ability to make an

22   opening statement.  Remember, the attorneys' statements are

23   not evidence.  And opening statement is not evidence.  But it

24   is simply an outline to help you understand what the party

25   expects the evidence will show.  Legally, a party is not

1    required to make an opening statement.

2        The government then begins by calling witnesses to the

3    stand, presenting evidence.  Counsel for the defense has the

4    ability to cross-examine.  Then, once the government's

5    evidence is all complete, if the defendant chooses to offer

6    evidence, they will call witnesses.  Counsel for the

7    government has the ability to cross-examine those witnesses.

8        After all the evidence has been presented, I will give

9    each of the jurors a packet of written instructions on the

10   law that applies to the case.  The attorneys have their final

11   opportunity to argue to you what they believe the evidence

12   has shown in what is known as closing arguments.

13       After that, then the 12 of you that will make up the final

14   jury on this particular panel will go back into the jury room

15   to begin deliberations on your verdict.  So the one other

16   question that is always asked of me is:  Well, does that mean

17   that 1 through 12 are the jurors, and 13 through 16 are the

18   alternates?  No.

19       The way we do it -- and hopefully all of you will be here

20   at the very end of this case.  But the way we do it is, we

21   actually have that little juror box over there that we used

22   to select juries a long time ago, purely randomly, from when

23   they came into the courtroom.  We will put all your names in

24   there, and we will spin it around.  And we pull out the four

25   names, and those people will be the alternates at that point

1   in time.  If you are an alternate, I will have further

2   instructions to give you at that point.  But that is a ways

3   down the line.

4       All right.  Let's talk about logistics.  Let's talk about

5   a few other things here in court.  The trial day.  When do we

6   start?  We start as close to 9 o'clock in the morning as

7   possible.  We go until noon.  I like to maximize the daylight

8   hours, especially as it starts getting later in the year

9   here.  We are in mid-October.

10      Who comes the farthest?  Is anybody from Whatcom County

11  still?  Oh, two of you.  Are you going to be able to take

12  advantage of staying downtown?

13          JUROR:  Yeah, I'm going to have to.  I live on Lummi

14  Island.

15          THE COURT:  I know.  That's awful.  That's a long,

16  long drive.

17      All right.  Anybody from Snohomish County?  Anybody from

18  Skagit County?

19          JUROR:  Kind of in between.

20          THE COURT:  Okay.  Kind of in between.  All right.

21  Well, as you all know, and if you don't know, Seattle has

22  some of the worst traffic around in the United States.  Part

23  of it is because of all the water we get to enjoy.  But that

24  really creates an issue.

25      I try not to go later than 4:30.  And what we do is we

1    squeeze our lunch hour in a little bit.  The attorneys hate

2    this, because they use that time for preparation and

3    everything.  But I would rather put the burden on them and

4    make it easier for you.

5        So what I do is go until noon.  Obviously, if there is a

6    witness we are going to finish in five minutes, we will go a

7    few minutes over, et cetera.  But I'm talking on a typical

8    day.  And then we like to start up about 1:15 in the

9    afternoon, all right?  And we go until about 4:20, 4:30 at

10   the latest.  Again, if there is a witness that we are getting

11   ready to finish up, for the convenience of that witness, we

12   will go ahead and finish up and might keep you a little bit

13   later.

14       But then that gives you just a little bit of a head start

15   in trying to beat the traffic getting out of here.  If you

16   get out of here by 5:30 or 5:20, it becomes really difficult

17   to get out of here.  So we'll try to give you that little bit

18   of a head start.

19       So what is the first thing that is going to happen when

20   you get home tonight?  Whoever lives with you is going to

21   say:  What happened?  What's going on?  Are you a juror?

22       Here is what I want you to tell them.  Tell them, yes, I

23   am a juror.  Tell them it's a criminal case.  Tell them what

24   it is about, okay?  And then say, and I can't talk to you

25   about it at all.  And then give them the reason why, all

 1    right?  Because they always want to know the reason why.  And

 2    it makes sense once they understand the reason why, because,

 3    otherwise, they are going to be looking at you like, come on,

 4    what's going on, come on.

 5         And the trouble is, see, that being human, the minute you

 6    say anything to them, they will give you their opinion.  And

 7    they haven't been here.  They haven't heard anything at all,

 8    right?  And that could influence you one way or the other.

 9    And, again, that would not be fair to both sides.

10         So tell them exactly what I just said:  Yes, I'm a juror.

11    Yes, it's a criminal matter.  Here are the charges brought by

12    the government.  And here is why we can't talk about it at

13    all.

14         Tell them you are going to keep notes, and at the end, you

15    will sit down with them and read all your notes to them,

16    you'll discuss anything that they want, answer any other

17    questions.  But in the meantime, out of fairness to the

18    parties and doing your duty, your duty as an impartial juror,

19    you are just not going to be able to talk to them about it.

20         A couple other things.  I told you earlier, when we took

21    our break, wear your juror badge every time you come into the

22    courthouse.  So the minute you clear downstairs, the security

23    area where the court security officers are down there, put

24    your juror badge on so that everybody knows that you are a

25    juror.

1    You are going to be riding up and down the elevators.  You

2    heard that long list of witness names that was read off by

3    both sides.  You don't know any of them.  Conversely, they

4    don't know any of you.  So should you be in the same common

5    areas, I want all the witnesses to be aware -- and I have

6    told the attorneys, make sure the witnesses are aware, if

7    they see anyone wearing a juror badge, it could be one of our

8    jurors, so be quiet at that point in time so you are not

9    accidentally exposed to anything.

10    All right.  You are not allowed to bring any food or drink

11    into the courthouse.  However, you can -- Laurie, can they

12    bring bottled water in?

13        THE CLERK:  They can.  And, actually, I think, as

14    jurors, they can bring in their lunch.  And if they have a

15    problem, I can take care of it.

16        THE COURT:  Okay.  All right.  So if any of you would

17    like to have water with you for the session, bring it in a

18    closed container, something that won't spill out here and

19    stuff.  And that's perfectly fine.

20    Cell phones.  Does anyone not have a cell phone?  Even all

21    of you old guys have cell phones, huh?  All right.  You may

22    not know how to use all the features, but you have them.  All

23    right.  Yes, I know.

24    Okay.  Cell phones.  Cell phones are indispensable

25    nowadays.  But we don't like them ringing in the courtroom.

1   In fact, when we moved over here, all of the judges agreed

2   that there would be a $100 fine if your phone goes off in the

3   courtroom.

4        You will see a sign back in the jury room when you come

5   out, right on the wall, that says:  Turn off your cell

6   phones.  When do they go off?  At 9:05, after we start in

7   session, and at usually about 1:25, when we start the

8   afternoon session, because that's when you have been using

9   your phone.

10       Also, smartphones, most of them have WiFi.  All of our

11  electronics are run through our court clerk at her computer,

12  everything, including the lights and everything else in the

13  courtroom, including the microphones.  She is able to turn

14  them up, turn them down, everything.

15       If your phone is not off, if it is simply on vibrate, you

16  will hear feedback every now and then.  Some weird stuff

17  happens.  So I need you to turn them off, all right?  During

18  the breaks, and especially during the lunch hour, yes, feel

19  free to check them if you want.  But you need to keep them

20  off.  It's just like an airplane.  It's going to crash that

21  747.  If you have your cell phone on, it will crash our

22  courtroom, all right?  So turn the thing off when you come

23  out here.

24       The chairs that you are in, for the two of you sitting on

25  the end, it may not be the most comfortable.  But, again, we

1  will try to work out the best thing that we possibly can.  If

2  any of you would feel more comfortable in a different seat,

3  just let us know.  Your juror number doesn't really matter

4  anymore, right?  Your order doesn't matter anymore, since we

5  do the random thing anyway at the end.  It won't make any

6  difference.

7      If one of you feels that maybe being on the end -- my

8  wife, for example, every time we go to a movie theater, likes

9  to sit on the outside edge, because, she says, my legs are so

10  long, I have to stretch them out.  She can't stretch them out

11  anywhere else.  No, I don't think so.  But it's just some

12  sort of mind-set.  It just makes her feel more comfortable.

13      If you are the same way, we could try to do the same

14  thing, try to make it easier.  But if any of you have any

15  issues with a knee or back or anything else like that, let us

16  know.  If it would make it better for you to sit on the end

17  or in the back, if you could stand up or do something like

18  that, we could always accommodate that as well.

19      All right.  Logistically, I think I have gone through

20  about everything I needed to say.  Do any of you have any

21  questions of me about anything that I have said, any of the

22  instructions that I have gone through, anything about your

23  duty as jurors?

24      Yes, ma'am.

25          JUROR:  The schedule, is it a Monday through Friday

schedule?

THE COURT:  Oh, good.  Yes.  Thank you.  We are trying to maximize the amount of time for you.  And there are some things that I just can't put off for a long time, sentencings and another matters, other cases and stuff.  So what we have done is we have kind of piled them all into certain days.  And what we will do is, we will let you know.  At the beginning of each week, we will let you know what days.

This week, we are going all through Friday.  But I will let you know at the very beginning of the week whether that following Friday is going to be a sentencing day or not going to be a sentencing day.  And there is also a holiday in there.  Of course there would be.  So we will talk about those things logistically as we get there.

I think you were trying to set up your deposition and stuff.  What we will do is, I will get together with Laurie, and we will look at all the dates and stuff.  So we will give you that tomorrow morning to help facilitate with your attorneys in terms of what dates might make the most sense.

JUROR:  I have another issue also for Friday.  I have been advised by my attorneys that typically Fridays are off.  So they scheduled the last round of interviews with some contractors.  We did some earlier this week, yesterday.  We would do the rest on Friday.  So it could be a potential

```
1    problem.
2            THE COURT:  Okay.  Well, unfortunately, I think this
3    is going to take precedence over anything.  If you need a
4    note from me or a phone call from me to one of the attorneys,
5    I am more than willing to do that as well.
6            JUROR:  I'm trying to make it work.
7            THE COURT:  All right.  Any other questions from any
8    one of you?
9        Yes, ma'am.
10           JUROR:  Is there somebody that can help me find a
11   place to, like, stay?
12           THE COURT:  We are not just going to turn you loose
13   downtown and say, go find your accommodations, no.
14           JUROR:  Well, I tried, but there's a convention going
15   on.
16           THE COURT:  No, no.  You work with Jeff or Renee
17   downstairs.  And we have certain hotels that do this all the
18   time down here.
19           JUROR:  Oh.  Okay.
20           THE COURT:  Yes.  And they are not very far away.
21   They are great.  They have happy hour.
22       All right.  There is another question?
23           JUROR:  Yeah.  Where do we first report in the
24   morning?
25           THE COURT:  All right.  There we go.  Now that you
```

1   are the jurors on this particular case, you do not need to go

2   down to the jury room for anything.  Well, I guess that is

3   not true.  They need to turn in some of the slips to Jeff.

4   But aside from that, there really is no need for you to go

5   down to the jury room anymore.

6        We are on the 13th floor.  There are two courtrooms per

7   floor.  The building is oriented north, south, west, east.

8   So mountains this way, water.  Pike Place Market is that way.

9   So when you come up the elevators, you just go this way,

10  Judge Martinez.  Judge Jones is on the other side.

11       When you get off the elevators, you will notice there is a

12  door on that corner over there.  So it's the southeast

13  corner.  There is a door.  That door will have a little key

14  pad like that one.  See that little black box there?  Because

15  everything here is run by those little black boxes that allow

16  you to open the doors.  Otherwise, you can't get in.

17       Each one of you is going to get a key card that allows you

18  to access that door on the outside.  And then, as you walk

19  down -- you see that hallway right behind these gentlemen

20  over here?  You will walk down that hallway, make a left

21  turn, and, again, with your key card, go right into the jury

22  room.  All of our breaks will be taken -- every time we

23  break, you will be asked to step back in the jury room.  You

24  will be excused from there.

25       Now, the jury room is designed for 12 people.  Sixteen is

```
1   a lot more than 12.  And there's two bathrooms in there.
2   There's a coffee maker in there.  There's a small
3   refrigerator in there and that stuff.  But it's tight.  It's
4   tight even for 12.  It's going to be tight for 16.  So you
5   are all going to get to know each other pretty well.
6       But I promise you this, and I have told the attorneys this
7   on multiple occasions, we will minimize the amount of time
8   you spend back there, because I know what it's like being in
9   that kind of cramped little quarters with this number of
10  people.  So we will try to keep our breaks exactly what we
11  say they are and bring you out when we need to.
12      Now, there will be times when I may need to take up
13  something with the attorneys on the record outside your
14  presence.  And I could either ask all of you to step back in
15  there, or we tend to do it during the break itself.  So if we
16  are delayed a little bit, usually that is what we are trying
17  to do.  So we are trying to take care of some legal matter
18  that doesn't involve you.  We will just go ahead and do it
19  out here on the record and then bring you out.  But I will
20  try to minimize that as much as possible.
21      So when you come up in the morning, you don't have to go
22  down to the jury room.  Come straight up, through the door,
23  all the way down the hall, into that jury room.  When all of
24  you are there, there is a little buzzer, and Ms. Cuaresma
25  will show you exactly what to do to advise us that you are
```

1    all here, because we assume that if someone isn't here in

2    time, you are just stuck in traffic somewhere.  And we wait.

3    And everybody waits.

4        So if that were to happen, and you are stuck somewhere,

5    use that cell phone and give us a call.  She will give you

6    the phone number.  Call the courtroom, call chambers, and

7    say, I'm stuck, I'm stuck, there is a traffic accident, I'm

8    on the way.  And then we will see what we do at that point in

9    time.

10       If -- hopefully this will not happen, ever come up, but if

11   for whatever reason you are just not able to come back,

12   something happens, you get sick, you get hurt, anything,

13   again, you've got to let us know, because, otherwise, we are

14   assuming you are on your way, and everybody is sitting and

15   waiting for you.

16       All right.  Any other questions?  Oh, the chairs that you

17   are in, I was going to tell you, they kind of rock back and

18   forth a little bit.  The arms adjust.  If you kind of pull

19   back, you can kind of pull them back, and they kind of move

20   and stuff.  I want you to fix them to your liking, and then I

21   want you to just leave them alone.  Don't play with them

22   anymore, all right?  So just fix them to your liking, just so

23   that they feel comfortable.

24       The monitors that we have, again, with evidence -- you

25   will see some items of evidence that may be shown to the

1    witness on their monitor, the attorneys' monitor over there,

2    and hopefully on your monitor.  If there is ever any problem

3    with any of your monitors, raise your hand and let me know.

4        When an exhibit is going to be identified, you may have

5    color bars on your monitor, all right?  It won't show on

6    yours.  It will show on ours.  And then once the court makes

7    a ruling, they will clear it.  It will be published.  That is

8    the technical term.  And then that means that you will get to

9    see it.

10       However, every now and then, being electronic gizmos, they

11   can go out.  If something happens to them, let me know.  Let

12   me know if there are any issues with not being able to see

13   it.  Some of them are sometimes giving up the ghost,

14   flickering or whatever.  Let us know, and then we can have

15   IT, assuming we have any IT people working, and we can have

16   them try to fix that between now and the next session.

17       All right.  Any other questions from any of you?

18       Okay.  We are going to let you go, because tomorrow

19   morning we will start openings.  I don't like to split up

20   openings.  I like both sides to be able to give their

21   openings.  We are going to give openings in the morning and

22   then start right into the trial itself, all right?

23       So wear comfortable clothing.  No one goes in that jury

24   room when you are here.  So I don't know a woman that would

25   actually do this, but you can leave your purse back there.

1   It will be okay.  You can leave coats and stuff back there.

2   No one is going to go back there when we are in session.

3       All right.  Other than that, have a great evening.

4       Madam Clerk, do you need anything else from them?

5           THE CLERK:  I will chat with them for just a few

6   minutes back there.

7           THE COURT:  All right.  Let me have all of you,

8   please, retire to the jury room.  You will be excused from

9   there.  We will see you tomorrow morning.

10      (Jury leaves courtroom.)

11          THE COURT:  Counsel, is there anything that we need

12  to take up at all today?

13          MR. FRANZE-NAKAMURA:  Your Honor, I just had one

14  logistical issue.  Tomorrow, during the opening, in place of

15  using poster boards, we were hoping to use a TV monitor and

16  put it in the middle of the courtroom, in the well.

17          THE COURT:  Yes.  And what we will do is, we will go

18  ahead and let you do your opening with a monitor.

19      And the defense is going to give an opening, right?  You

20  both are going to split it?

21          MR. CARPENTER:  Yes.

22          THE COURT:  Then we will take just a real short break

23  and remove the monitor and let the defense do theirs.

24          MR. CARPENTER:  And I'll set up my easels for my

25  poster boards at that time.

1          MR. ZULAUF:  Your Honor, the problem is always that

2    of having a monitor in front of the defense table and our not

3    being able to see it.

4          THE COURT:  And I think you will be able to see

5    anything that is on the monitor on your screen as well.

6          MR. ZULAUF:  Correct.

7          THE COURT:  And we will have that large monitor in

8    the back, Mr. Zulauf.  That will be on as well.

9          MR. ZULAUF:  That's fine.

10          THE COURT:  And please feel free to move around if

11    you want a better view, okay?

12          MR. ZULAUF:  Okay.

13          THE COURT:  All right.  Then if I could have everyone

14    maybe be here five minutes to 9:00, ready to go.  We will see

15    you all tomorrow morning.

16          (Proceedings adjourned.)

17

18

19

20

21

22

23

24

25

0

C E R T I F I C A T E

I, Kari McGrath, CCR, CRR, RMR, Official Court Reporter for the United States District Court in the Western District of Washington at Seattle, do hereby certify that I was present in court during the foregoing matter and reported said proceedings stenographically.

I further certify that thereafter, I have caused said stenographic notes to be transcribed under my direction and that the foregoing pages are a true and accurate transcription to the best of my ability.

Dated this April 23, 2014.

/S/  KARI McGRATH

Kari McGrath, CCR, CRR, RMR

Official Court Reporter