**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, <br>     *Plaintiff-Appellee*, <br><br> v. <br><br> MARK F. SPANGLER, <br>     *Defendant-Appellant*. | No. 14-30042 <br><br> D.C. No. <br> 2:12-cr-00133- <br> RSM-1 <br><br> OPINION |

Appeal from the United States District Court
for the Western District of Washington
Ricardo S. Martinez, District Judge, Presiding

Argued and Submitted
December 10, 2015—Seattle, Washington

Filed January 15, 2016

Before: M. Margaret McKeown and Richard C. Tallman,
Circuit Judges, and Joan Humphrew Lefkow,[*] Senior
District Judge

Opinion by Judge Lefkow

---

[*] The Honorable Joan Humphrey Lefkow, Senior United States District Judge for the Northern District of Illinois, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel affirmed convictions on twenty-four counts of wire fraud, seven counts of money laundering, and one count of investment-adviser fraud.

The panel held that the district court did not abuse its discretion in barring on relevancy grounds the defendant's expert witness from testifying, and held that any error was harmless. The panel rejected the defendant's contention that exclusion of the expert's testimony violated his Sixth Amendment right to present a defense.

The panel held that the district court did not abuse its discretion in admitting testimony regarding the defendant's status as a fiduciary, introduced to explain why the defendant's clients did not question his documents and reports, where the investors' lay understandings of the defendant's fiduciary obligations demonstrated how he was able to accomplish the alleged fraud, and where any concerns about the jurors' equating violations of fiduciary duty with criminal liability were put to rest by the district court's careful instructions on the elements of the offenses and the absence of breach of fiduciary duty as a consideration in determining guilt.

The panel rejected the defendant's contention that the district court violated his Fifth Amendment rights when it

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Case 2:12-cr-00133-RSM Document 205 Filed 01/15/16 Page 3 of 19
Case: 14-30042, 01/15/2016, ID: 9829589, DktEntry: 45-1, Page 3 of 19

UNITED STATES V. SPANGLER 3

declined to strike Count 33, which alleged that the defendant committed investment-adviser fraud by violating 15 U.S.C. § 80b-6 (prohibiting investment advisers from engaging in certain conduct) without mentioning 15 U.S.C. § 80b-17 (through which violations of § 80b-6 are made criminal) and without using the word "willful."

The panel concluded that cumulative error analysis is inapposite, as the defendant has not demonstrated any errors.

## COUNSEL

Suzanne Lee Elliott (argued), Law Office of Suzanne Lee Elliott, Seattle, Washington, for Defendant-Appellant.

Teal Luthy Miller (argued), Assistant United States Attorney; Annette L. Hayes, Acting United States Attorney, United States Attorneys' Office, Western District of Washington, Seattle, Washington, for Plaintiff-Appellee.

## OPINION

LEFKOW, Senior District Judge:

Mark F. Spangler appeals his jury convictions on twenty-four counts of wire fraud (18 U.S.C. § 1343), seven counts of money laundering (18 U.S.C. § 1957), and one count of investment-adviser fraud (15 U.S.C. § 80b-17). We focus on three of Spangler's arguments raised on appeal: (1) that the district court abused its discretion in barring his expert witness from testifying, and that the exclusion of the expert's testimony violated his Sixth Amendment right to present a

defense; (2) that the district court abused its discretion in permitting testimony about his status as a fiduciary; and (3) that the district court violated his Fifth Amendment rights by failing to strike count 33 from the second superseding indictment.[1] We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## BACKGROUND[2]

On May 14, 2013, a grand jury returned a second superseding indictment charging Spangler with twenty-five counts of wire fraud, seven counts of money laundering, and one count of investment-adviser fraud. At trial, the government presented evidence of the following:

Spangler was a registered investment adviser and a one-time chairman of the National Association of Personal Financial Advisors. From the early 1980s until 2011, Spangler headed a Seattle investment firm known during the relevant time period as The Spangler Group, which serviced between twenty and twenty-five client families at any given time.

In 1998, Spangler set up five investment funds, two of which—the Equity Investors Group, LLC (Equity) and the Income+ Investors Group, LLC (Income)—are particularly relevant for purposes of this appeal. Spangler's clients

---

[1] We resolve all other issues and affirm the district court in a memorandum disposition filed concurrently with this opinion.

[2] We limit this section to general background and expand on the facts relevant to Spangler's arguments on appeal in the analysis sections set forth below.

expected that the money they put into Equity and Income would be invested in publicly-traded companies and that investment decisions would be made by an outside investment manager, rather than Spangler. These expectations found support in the private placement memoranda (PPMs) for the funds. Indeed, the 1998 version of the PPM for Equity, which was drafted by William Carleton, Spangler's attorney, provided that "the securities in which [Equity] invests are expected to be traded in public markets" and that Spangler would use Southeastern Asset Management, Inc. to make investment decisions. Both PPMs provided that the funds' investment objectives could be changed only by a two-thirds vote of the owners.

The PPMs also contained disclaimers, which the defense emphasized at trial. For example, the PPMs warned clients that the investments to be made involved a "high degree of risk" and that "no investment in these securities should be made by any person who is not in a position to lose the entire amount of such investment." At trial, Carleton described these warnings as "boilerplate."

In 1999, Spangler and Carleton organized Spangler Ventures, which consisted of a series of investment funds dedicated to startup companies. According to Carleton, the purpose of Spangler Ventures was to offer "high-risk venture-style . . . startup company investing" separate from the five funds set up in 1998. Spangler was intimately involved in two of the startups in which the Spangler Ventures funds invested: TeraHop and Tamarac. Spangler served as chairman of both entities and held other positions as well.

Despite his apparent intent to separate the funds invested in public equities from those invested in startup companies,

in 2003 Spangler began to move money from Equity and Income into TeraHop and Tamarac, all without his clients' consent. Although he sometimes transferred the money directly, he often funneled the money through the Spangler Ventures funds first, largely because he stood to gain 16% of any profits made by Spangler Ventures under the terms of those funds.

Spangler's diversion of cash from Equity and Income to TeraHop was especially problematic because TeraHop lost more than $50 million between 2001 and 2010. Given TeraHop's poor financial performance, TeraHop frequently could not make interest payments on loans it had taken from Income. Accordingly, TeraHop borrowed money from Equity and various Spangler Ventures funds to make the payments, and Income, in turn, used the money to pay quarterly dividends to investors. In this way, Spangler operated a circular Ponzi scheme, using his clients' money to generate their interest payments.

To conceal evidence of wrongdoing, Spangler provided his clients with carefully worded quarterly statements titled "portfolio performance analyses." These statements referred to the funds invested in Equity as "marketable equities" and the funds invested in Income as "specialty bonds." Investments in "private equities" were listed in a separate category, creating the illusion that only a small percentage of funds was dedicated to private investments such as startup companies. In reality, however, a much larger portion of Spangler's clients' portfolios was invested in private equities, as funds invested in Equity and Income were also being moved into TeraHop and Tamarac. For example, a portfolio report for one of Spangler's clients from the last quarter of 2010 represented that the client had less than 1% of his

Case: 2:12-cr-00133-RSM Document 205 Filed 01/15/16 Page 7 of 19
Case: 14-30042, 01/15/2016, ID: 9829589, DktEntry: 45-1, Page 7 of 19

UNITED STATES V. SPANGLER               7

portfolio invested in TeraHop when 51% of his portfolio was actually invested in the startup.

In 2008, Spangler sent letters to his clients and asked them to sign new PPMs for Equity, Income, and other funds. The letters informed Spangler's clients of name changes for some of the funds (e.g., Equity became "SG Growth+ Investors Group, L.L.C." and Income became "SG Income+ Investors Group, L.L.C."). The new PPMs gave Spangler discretion to invest funds himself rather than with the assistance of an outside investment adviser. Further, the revised PPM for Equity changed the language of the original PPM stating that securities were "expected to be" traded in public markets to read that securities "may be" traded in public markets. The PPMs did not mention TeraHop or Tamarac directly, and Spangler's clients testified that they did not closely review the new PPMs or seek legal advice before signing them, largely because they trusted Spangler and relied on his expertise.

Concerned about their investments in the wake of the economic downturn of 2008, some of Spangler's clients asked him to liquidate their investments in Equity and Income, which Spangler could not accomplish within the time constraints established by the PPMs. When Spangler informed his clients that he needed to seek new investors to liquidate their interests, they told him that the plan sounded like a Ponzi scheme. From there, the situation unraveled, and in 2011 The Spangler Group was forced into receivership. The receiver was able to recover some of Spangler's clients' funds, but many of his clients lost millions.

At trial, Spangler rested after the government's case without testifying or offering other evidence. On November

Case 2:12-cr-00133-RSM Document 205 Filed 01/15/16 Page 8 of 19
Case: 14-30042, 01/15/2016, ID: 9829589, DktEntry: 45-1, Page 8 of 19

8 UNITED STATES V. SPANGLER

7, 2013, the jury found Spangler guilty of thirty-two of the thirty-three counts charged, finding him not guilty of one count of wire fraud. On March 13, 2014, the district court sentenced him to 192 months of imprisonment and three years of supervised release. Spangler timely appealed, challenging only his convictions.

## DISCUSSION

### I. Whether the District Court Abused its Discretion in Barring Spangler's Expert Witness From Testifying

Spangler first argues that the district court erred in precluding his expert witness, John Keller, from testifying. We review a district court's decision to exclude expert testimony for an abuse of discretion. *See United States v. Laurienti*, 611 F.3d 530, 547 (9th Cir. 2010).

Before trial, Spangler's counsel disclosed Keller and three other potential expert witnesses. The Keller disclosure stated as follows:

> John Keller is a forensic accountant and former criminal investigator with the Internal Revenue Service. He will testify that he reviewed the receiver's investigation of the Spangler Group businesses. He will testify that based on his review of the receiver's analysis that there were no unexplained diversions of assets. Mr. Keller personally reviewed several portfolio position reports and portfolio performance summaries. He compared various account statements with the Spangler Company database of client records.

Case 2:12-cr-00133-RSM Document 205 Filed 01/15/16 Page 9 of 19
Case: 14-30042, 01/15/2016, ID: 9829589, DktEntry: 45-1, Page 9 of 19

UNITED STATES V. SPANGLER 9

>He found nothing in this analysis that let [*sic*] him to believe that there was any attempt to make false representations to client [*sic*] about their account balances or account activity. He saw nothing in the client data reports to suggest that Mr. Spangler was inappropriately diverting client funds for his own benefit. Mr. Keller has also reviewed the client portfolio analysis to determine the client's rates of return on their investments and compared them to rates of return if the clients had invested money into index funds or kept their money in Southeast Asset Management.

The government moved to exclude all four expert witnesses under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The district court denied the government's motion as it related to three of Spangler's witnesses but granted the motion with respect to Keller, deeming his testimony not relevant.

Initially, the government contends that Spangler may not raise this argument on appeal because he failed to testify on his own behalf or otherwise introduce witness testimony or other evidence at trial. In support, the government relies on *Luce v. United States*, 469 U.S. 38 (1984), which held that, to preserve for review a claim of improper impeachment of the defendant with a prior conviction, the defendant must testify. *Luce* provides no analog for the situation here. Spangler's

ability to challenge the ruling excluding expert testimony is governed by Federal Rule of Evidence 702.**³**

With respect to diversions of assets and false representations, the district court did not abuse its discretion in excluding the proffered testimony. Spangler argues that Keller's testimony would have been relevant to his intent to defraud his clients. At trial, the government argued that Spangler had hidden from his clients that he had been moving their money from Equity and Income into TeraHop and Tamarac by listing on his clients' financial statements the funds invested in Equity and Income in separate categories from the funds invested in private equities. In doing so, Spangler failed to disclose that the funds in Equity and Income were also being funneled into private equities, creating the illusion that his clients' portfolios were primarily invested in publicly traded companies. Given the government's theory, any testimony that the clients' financial statements accurately reflected the amount of money invested in each Spangler Group fund would have been irrelevant. Rather, the government's point was that, while the financial statements were technically accurate, they failed to disclose the reality behind Spangler's investment decisions. Indeed, the statements were in evidence for the jury to consider.

Nor was Keller's proposed testimony about the prudence of Spangler's investment decisions relevant to fraudulent

---

**³** Neither party disputes that the district court applied the correct legal rule. Indeed, the court's cited reason for exclusion was lack of relevance, which is folded into the *Daubert* standard under Federal Rule of Evidence 702. *See Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) ("We have interpreted Rule 702 to require that '[e]xpert testimony . . . be both relevant and reliable.'" (alterations in original) (quoting *United States v. Vallejo*, 237 F.3d 1008, 1019 (9th Cir. 2001))).

Case 2:12-cr-00133-RSM Document 205 Filed 01/15/16 Page 11 of 19
Case: 14-30042, 01/15/2016, ID: 9828589, DktEntry: 45-1, Page 11 of 19

UNITED STATES V. SPANGLER 11

intent. The government's case did not depend on whether investing in private equities was an advisable investment strategy but on whether Spangler diverted his clients' funds without their knowledge or consent. That in hindsight Spangler's investments in startup companies were arguably prudent does not negate his fraudulent intent. *See United States v. Benny*, 786 F.2d 1410, 1417 (9th Cir. 1986) ("While an honest, good-faith belief in the truth of the misrepresentations may negate intent to defraud, a good-faith belief that the victim will be repaid and will sustain no loss is no defense at all." (citation omitted)).

Even if the district court had erred in barring Keller's testimony, the error was harmless. Under our test for harmless error, we "must reverse unless it is more probable than not that the error did not materially affect the verdict." *Laurienti*, 611 F.3d at 547 (quoting *United States v. Rahm*, 993 F.2d 1405, 1415 (9th Cir. 1993)). Spangler was able to assert repeatedly through cross-examination and his counsel's opening statement and closing argument that the financial statements distributed by Spangler accurately reflected his clients' investments in the different Spangler Group funds and that Spangler's investment strategy was prudent given the financial crisis of 2008. Moreover, Spangler could have called a different expert witness, Peter Brous, to testify about "the state of the economy and its effects on various investments during a time frame spanning from 2005 to 2010." Given that Spangler chose not to call Brous to support his argument that Spangler's investment strategy was sound, he cannot credibly argue that he was prejudiced by the district court's exclusion of Keller. *Cf. United States v. Cohen*, 510 F.3d 1114, 1127 (9th Cir. 2007) (reversing the defendant's conviction and remanding for a new trial when

12          UNITED STATES V. SPANGLER

the erroneous exclusion of expert testimony left the defendant "without any way to explain" his argument).

We also reject Spangler's attempt to constitutionalize his claims by arguing that the district court's ruling deprived him of his Sixth Amendment right to present a defense. While the Constitution affords the accused "a meaningful opportunity to present a complete defense," *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)), a criminal defendant "must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *United States v. Waters*, 627 F.3d 345, 354 (9th Cir. 2010) (quoting *United States v. Perkins*, 937 F.2d 1397, 1401 (9th Cir. 1991)). In this case, Spangler was able "to present the substance" of his defense to the jury. *See id.*; *see also Perkins*, 937 F.2d at 1401. The limited nature of Spangler's defense was in large part self-imposed, as he declined to introduce three expert witnesses the district court deemed admissible. Accordingly, we find no constitutional error.

**II. Whether the District Court Abused its Discretion in Admitting Testimony Regarding Spangler's Status as a Fiduciary**

Spangler next contends that the district court erred in permitting testimony about Spangler's status as a fiduciary. We review for an abuse of discretion a district court's decision to admit evidence. *United States v. Curtin*, 489 F.3d 935, 943 (9th Cir. 2007) (en banc).

Before trial, Spangler moved to strike the part of the second superseding indictment that referenced the fiduciary

Case 2:12-cr-00133-RSM Document 205 Filed 01/15/16 Page 13 of 19
Case: 14-30042, 01/15/2016, ID: 9828589, DktEntry: 45-1, Page 13 of 19

UNITED STATES V. SPANGLER 13

duty he owed to his clients[4] and to exclude any evidence of his status as a fiduciary at trial. Specifically, Spangler argued that evidence of his fiduciary duty would raise the risk that the jury would perceive a violation of his fiduciary duties (a civil offense that can result from negligent conduct) as tantamount to willful fraud, and consequently, find criminal liability. After finding that the portion of the motion directed at the indictment was moot, as the court would not read the indictment to the jury, the district court denied the remainder of the motion on the basis that its instructions would delineate "what the elements of each of the crimes charged against Mr. Spangler are, and what specific burden the government bears in proving each of those particular elements."

Government witnesses did mention Spangler's status as a fiduciary in their testimony. For example, when the prosecutor asked James Peterson, a former client of Spangler's, whether he had a lawyer review various legal documents he had received from Spangler, Petersen answered that he had not and explained, "I mean, I was paying Mr. Spangler a good amount of money to be a financial advisor. . . . And, you know, he was my fiduciary. He had a fiduciary responsibility to me." Similarly, the prosecutor referenced Spangler's fiduciary duty to his clients during closing argument and rebuttal. For example, the prosecutor argued that Spangler's clients had asked him to "protect my life's work. . . . And Mark Spangler, as their investment advisor, as their fiduciary, said, I will protect it. . . . That is what a fiduciary is. That is why Mark Spangler's clients

---

[4] The investment-adviser-fraud count of the second superseding indictment provided, "MARK F. SPANGLER . . . owed a fiduciary obligation of good faith, loyalty, and fair dealing to [his] clients, which entrusted MARK F. SPANGLER . . . with their money to manage."

Case 2:12-cr-00133-RSM Document 205 Filed 01/15/16 Page 14 of 19
Case: 14-30042, 01/15/2016, ID: 9828589, DktEntry: 45-1, Page 14 of 19

14          UNITED STATES V. SPANGLER

trusted him when they handed him their life's work.  That is how these crimes happened."  Although the government proffered a proposed jury instruction specifying when a fiduciary duty exists and instructing the jury that a violation of that duty was one factor to consider in determining whether the government had proved investment-adviser fraud beyond a reasonable doubt, the district court refused the instruction.  With respect to both the wire-fraud and investment-adviser-fraud counts, the court instructed the jury on the elements of proof without indicating that it could consider breach of fiduciary duty.

Spangler now relies on *United States v. Christo*, 614 F.2d 486 (5th Cir. 1980), and *United States v. Wolf*, 820 F.2d 1499 (9th Cir. 1987), to argue that the cumulative effect of references to Spangler's fiduciary duties by government witnesses and the prosecutor, as well as the district court's failure to give a limiting instruction, raised the risk that a reasonable juror would have concluded that any breach of fiduciary duty constituted fraud.  Both *Christo* and *Wolf* dealt with the danger of jurors' equating violations of civil statutes or regulations with criminal liability in the context of prosecutions against bank executives for misapplication of bank funds under 18 U.S.C. § 656.

In *Christo*, the government's case centered on a series of overdrafts in the defendant executive's account which, the government argued, were violations of a civil statute prohibiting a bank from extending more than $5,000 credit to its executive officers.  *Christo*, 614 F.2d at 489.  The government "attempt[ed] to bootstrap" the civil violations into criminal misapplication felonies.  *Id.* at 492.  In addition, the court instructed the jury to consider whether the overdrafts violated the civil statute in determining criminal

Case 2:12-cr-00133-RSM Document 205 Filed 01/15/16 Page 15 of 19
Case: 14-30042, 01/15/2016, ID: 9828589, DktEntry: 45-2, Page 15 of 19

UNITED STATES V. SPANGLER 15

liability. *Id.* at 491. The Fifth Circuit reversed the convictions on the basis that the government's conduct compounded by the improper jury instruction required a new trial. *See id.* at 492 ("After examining the record of the trial, one questions whether Christo was found guilty of willful misapplication with intent to injure and defraud the bank or . . . for overdrafting his checking account.").

Similarly, in *Wolf*, we relied on *Christo* in reversing convictions of a bank executive for criminal misapplication of bank funds and false entry. There, the government relied on violations of banking Regulation O, which requires the defendant to disclose to the bank's directors his interest in bank loans, to show a material nondisclosure on a loan application. *Wolf*, 820 F.2d at 1505. The jury was instructed that violation of Regulation O was "background evidence," but we concluded the instruction was insufficient to cure the "serious risk that the jury would find Wolf guilty of criminal misapplication and false entry because he failed to comply with Regulation O." *Id.*

Nothing in this record indicates that testimony and argument regarding Spangler's fiduciary status "impermissibly infected" Spangler's prosecution. *Cf. Christo*, 614 F.2d at 492. As set out above, the testimony regarding fiduciary duty was introduced to explain why Spangler's clients did not question his documents and reports. The investors' lay understandings of Spangler's fiduciary obligations—they thought they could trust him—demonstrated how he was able to accomplish the alleged fraud. We are satisfied that admission of the testimony did not result in the sort of bootstrapping against which *Christo* and *Wolf* warned. Moreover, any concerns about the jurors' equating violations of fiduciary duty with

criminal liability were put to rest by the district court's careful instructions on the elements of the offenses and the absence of reference to breach of fiduciary duty as a consideration in determining guilt. As such, we conclude there was no abuse of discretion.

**III.   Whether the District Court Violated Spangler's Fifth Amendment Rights When it Declined to Strike Count 33 From the Indictment**

Spangler also contends that the district court violated his Fifth Amendment rights when it declined to dismiss count 33 of the second superseding indictment. We review the sufficiency of an indictment de novo. *United States v. Lo*, 231 F.3d 471, 481 (9th Cir. 2000).

Count 33 alleged that Spangler committed investment-adviser fraud under the Investment Advisers Act of 1940 by violating 15 U.S.C. § 80b-6, which prohibits investment advisers from engaging in certain conduct. A separate section of the Act, 15 U.S.C. § 80b-17, provides that "[a]ny person who willfully violates any provision of this subchapter . . . shall, upon conviction, be fined not more than $10,000, imprisoned for not more than five years, or both." Although the second superseding indictment charged Spangler with failing to disclose his interests in TeraHop and Tamarac and the full extent of his clients' investments in those entities in violation of § 80b-6, it made no mention of § 80b-17. Nor did it use the word "willful."

Ten days into trial and after the government had presented all of its evidence, Spangler moved to dismiss count 33, arguing that the second superseding indictment failed to cite the correct statutory subsection and to allege willfulness, an

UNITED STATES V. SPANGLER 17

essential element of the offense. Because of these defects, Spangler argued, it was unclear whether the grand jury had passed on the charge. The district court denied the motion, finding that it was untimely and therefore that, giving the indictment a liberal and common-sense reading, it could not be said "that the defendant was in any way misled or prejudiced by the error, if there is an error, in the citation. Nor is the citation omission grounds to dismiss the indictment, at least at this point in time."

Although the failure of an indictment to state an offense cannot be waived, a tardy challenge—that is, one made during trial or after the verdict—"'suggests a purely tactical motivation' and is needlessly wasteful because pleading defects can usually be readily cured through a superseding indictment before trial." *Lo*, 231 F.3d at 481 (quoting *United States v. Pheaster*, 544 F.2d 353, 361 (9th Cir. 1976)). Further, "'the fact of the delay tends to negate the possibility of prejudice in the preparation of the defense,' because one can expect that the challenge would have come earlier were there any real confusion about the elements of the crime charged." *Id.* (quoting *Pheaster*, 544 F.2d at 361). Given these considerations, "indictments which are tardily challenged are liberally construed in favor of validity," *Echavarria-Olarte v. Reno*, 35 F.3d 395, 397 (9th Cir. 1994) (quoting *United States v. Rodriguez-Ramirez*, 777 F.2d 454, 459 (9th Cir. 1985)), and the question becomes whether the indictment is sufficient when "read in a common sense, nontechnical fashion." *Lo*, 231 F.3d at 481.

Applying that standard here, we have no trouble sustaining the indictment. "Correct citation to the relevant statute, though always desirable, is not fatal if omitted," as long as the "the error did not mislead the defendant to his

prejudice." *United States v. Vroman*, 975 F.2d 669, 671 (9th Cir. 1992) (internal quotation marks and citations omitted). Here, Spangler does not argue that he was prejudiced by the lack of a citation to § 80b-17 nor could he, as he acknowledged in a pretrial motion that "[v]iolations of § 80b-6 are made criminal through § 80b-17."

Instead, Spangler argues that the absence of the word "willful" from the investment-adviser-fraud count raises the risk that the grand jury did not find that Spangler acted with fraudulent intent. This contention also fails. As we stated in *United States v. Awad*, 551 F.3d 930, 936 (9th Cir. 2009), "an inference of willfulness is obvious because of the facts alleged in the indictment." Specifically, the second superseding indictment alleged, among other things, that Spangler "knowingly devised a scheme and artifice to defraud investors" by diverting their money "into two risky private start-up companies" and concealing evidence of any wrongdoing. Count 33 expressly incorporated all other portions of the indictment by reference, including the language quoted above. Given that the Supreme Court in a related context has defined a "willful" act as "one undertaken with a 'bad purpose,'" *Bryan v. United States*, 524 U.S. 184, 191 (1998); *see also Awad*, 551 F.3d at 936, a reasonable grand juror would infer from the second superseding indictment that Spangler acted with the requisite bad purpose.

### IV.    Cumulative Error

Finally, Spangler maintains that the cumulative effect of the errors committed at trial justifies reversal of his convictions. Under the law of cumulative error, where "no single trial error examined in isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of

multiple errors may still prejudice a defendant." *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996). Here, the cumulative error analysis is inapposite, as Spangler has not demonstrated any errors by the district court. *See United States v. Martinez-Martinez*, 369 F.3d 1076, 1090 (9th Cir. 2004).

## CONCLUSION

For the foregoing reasons, we affirm Spangler's convictions.

**AFFIRMED.**